TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | No. 91-205 |
| of | : | |
| | : | |
| DANIEL E. LUNGREN | : | AUGUST 22, 1991 |
| Attorney General | : | |
| | : | |
| ANTHONY S. DaVIGO | : | |
| Deputy Attorney General | : | |
| | : | |

The HONORABLE VICTOR J. WESTMAN, COUNTY COUNSEL, CONTRA COSTA COUNTY, has requested an opinion on the following question:

May a general law county enter into an agreement with a recognized employee organization to jointly administer a county funded employee health benefits trust?

CONCLUSION

A general law county may enter into an agreement with a recognized employee organization to jointly administer a county funded employee health benefits trust.

ANALYSIS

We are advised that a general law county is considering whether to establish for the benefit of its employees and retired employees a health benefits trust, funded by the county but jointly controlled and administered by the county and the recognized employee organization. The trust would be established during the "meet and confer" collective bargaining process of the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510)[1] with the recognized employee organization. (See 74 Ops.Cal.Atty.Gen. 42, 43-45 (1991).) The arrangement would be similar to a Taft-Hartley employer-employee benefit trust authorized for certain entities under federal law. (29 U.S.C. § 186; see 65 Ops.Cal.Atty.Gen. 189, 191 (1982).)

The inquiry presented is whether a county may establish such a health benefit trust. We conclude that it may.[2]

---

[1]All section references herein are to the Government Code unless otherwise indicated.

[2]If a general law county may do so, clearly a charter county may do so, depending upon the language of its charter. (See Cal. Const., art. XI, §§ 3, 4; *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 314-317; *Curphey* v. *Superior Court* (1959)

Government Code sections 53200-53210 provide for health and welfare benefits for the officers, employees, and retired employees of a local agency. Section 53201, subdivision (a) states:

> "The legislative body of a local agency, subject to such conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees . . . who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that such charges are not covered from payments from funds under the jurisdiction of the local agency as permitted by Government Code section 53205."

Section 53205, in turn, provides that the legislative body may authorize payment from its own funds of all or part "of the premiums, dues, or other charges for health and welfare benefits." With respect to the foregoing, the term "local agency" includes a county, the term "legislative body" includes a county board of supervisors, and the phrase "health and welfare benefits" includes medical expenses or related benefits whether provided on an insurance or a service basis. (§ 53200, subds. (a), (c), (d).)

While section 53201 authorizes a county to provide a health benefits program for its employees and retired employees, may it do so under a trust arrangement? Section 53206 provides:

> "The local agency may pay amounts derived from payroll deductions . . . and amounts derived from employer contributions . . . directly to the contracting insurers or service organizations, *or to the trustees of a fund established to procure health and welfare benefits,* or to such other recipients as the contracting insurers, service organizations, and the local agency may designate." (Emphasis added.)

Section 53206 specifically authorizes payments made by the local agency and its employees to a trust established for the procurement of health and welfare benefits.

With respect to whether the proposed trust may be jointly administered, it is generally true that a public agency may not, *unless authorized by law,* delegate a function the exercise of which inescapably requires the use of such reason and discretion as may only be accomplished by action of the agency itself. (Cf. *Webster v. Board of Educ.* (1903) 140 Cal. 331, 332; 71 Ops.Cal.Atty.Gen. 266, 268 (1988); 65 Ops.Cal.Atty.Gen. 32, 37 (1982); 63 Ops.Cal.Atty.Gen. 240, 243 (1980).) Here, section 53206 authorizes "trustees" to administer the program.

In our view, the county would not be ceding to a private entity the ultimate control over matters involving the exercise of judgment and discretion in connection with the benefit plan. (67 Ops.Cal.Atty.Gen., *supra*, 35-36.) First, the liability of the trust and of the county would be limited to the funds made available by the county. Second, the amount of funds to be paid by the county into the trust would be determined at the outset through negotiation and agreement by the county. Third, the criteria for the award of benefits would be fixed by the terms and specifications of the collective bargaining agreement. Finally, the county would retain equal and joint administrative authority over the trust. Each of these factors supports the conclusion that the county may enter into the proposed arrangement.

---

169 Cal.App.2d 261, 268-269.)

One other statutory provision requires mention. Section 53202.3 expressly provides: "No plan or policy may be approved . . . unless its issuance or the payment of benefits thereunder is otherwise lawful in this State. . . ." It is assumed, accordingly, that the benefits in question would be provided under a plan that complies with applicable provisions of the Insurance Code (see Ins. Code, §§ 700, 740, 742, subd. (b)) or the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1349 et seq.), except as may be otherwise exempt by law. (See 73 Ops.Cal.Atty.Gen. 296, 300 (1990); 65 Ops.Cal.Atty.Gen. 189, 193 (1982); 54 Ops.Cal.Atty.Gen. 20, 21 (1971); 32 Ops.Cal.Atty.Gen. 229, 233-234 (1958).)

A final issue arises concerning whether the county's payments to the trust would be consistent with the provisions of section 6 of article XVI of the California Constitution prohibiting "gifts" of public funds.[3] It has been held that public funds may be disbursed if a direct and substantial public purpose is served and private entities are benefited only as an incident to the public purpose. (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 583; *Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834, 845.) The public purpose benefit to the state constitutes "consideration," and the funds expended would thus not be a gift even though private persons may be benefited. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 745-746; 67 Ops.Cal.Atty.Gen. 31, 34 (1984).)

Whether a particular program serves a public purpose is primarily a legislative determination and will not be disturbed by the courts so long as that determination has a reasonable basis. (*California Housing Finance Agency* v. *Elliott, supra*, 17 Cal.3d at 583; *County of Alameda* v. *Carleson, supra*, 5 Cal.3d at 746.) We entertain no doubt that the payments in question by the county for the health benefits coverage of its employees and retired employees would serve a direct and substantial public purpose. (73 Ops.Cal.Atty.Gen., *supra*, 304.)

In answer to the question presented, therefore, it is concluded that a county may enter into an agreement with a recognized employee organization to jointly administer a county funded employee health benefits trust.

* * * * *

---

[3]The prohibition states in part:

"The Legislature shall have no power to . . . authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever."